OPINION
{¶ 1} Benjamin Walton was convicted after a bench trial in the Montgomery County Court of Common Pleas of one count of sexual battery, in violation of R.C. 2907.03(A)(5); one count of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A); four counts of rape of a child under 13, in violation of R.C. *Page 2 2907.02(A)(1)(b); and two counts of gross sexual imposition of a child under 13, in violation of R.C. 2907.05(A)(4). The court sentenced Walton to four years in prison for sexual battery; one year in prison for unlawful sexual conduct with a minor; mandatory six-year prison terms for each count of rape of a child under 13; and four-year prison terms for each count of gross sexual imposition of a child under 13. The sentences were all ordered to be served concurrently, for an aggregate six-year term. The court also designated Walton to be an aggravated sexually-oriented offender.
 {¶ 2} All of the charges stemmed from Walton's contact with his younger half-brother, C.W. In August 2005, C.W. informed his mother that Walton had been sexually abusing him since he was twelve years old. Mrs. Walton contacted the Care House in Montgomery County to report the allegations. Vandalia Police Detective Todd Flynn interviewed both C.W. and Walton on August 30, 2005. After waiving his Miranda rights, Walton provided Detective Flynn with a written statement admitting that, "over the past two years or so," he had engaged in mutual masturbation and oral sex with C.W. He also confessed to penetrating C.W. with a sex toy and stated that sexual encounters had occurred between six and eight times. Detective Flynn testified that C.W. told him the sexual encounters with Walton had been occurring for two and a half to three years.
 {¶ 3} On October 19, 2005, Walton was indicted on fourteen counts of inappropriate sexual interaction with a minor: four counts of sexual battery, four counts of unlawful sexual conduct with a minor, four counts of rape of a child under 13, and two counts of gross sexual imposition of a child under 13. On November 8, 2005, Walton moved for a bill of particulars. The state filed a bill of particulars on February *Page 3 
22, 2006. On March 2, 2006, Walton filed a renewed application for a bill of particulars and a motion to dismiss the indictment for lack of specificity with regard to the nature of the acts as well as the locations and dates of the acts. The trial court denied both requests.
 {¶ 4} Walton was tried on March 9, 2006. After the state rested its case, and pursuant to Walton's Crim.R. 29 motion for acquittal, the court dismissed three counts of sexual battery and three counts of unlawful sexual conduct with a minor. Walton was convicted of the remaining counts as described above, and the court sentenced him accordingly, as described above.
 {¶ 5} Walton appeals from his convictions, raising two assignments of error.
 {¶ 6} I. "THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT'S MOTION TO DISMISS."
 {¶ 7} In his first assignment of error, Walton claims that the indictment and bill of particulars were too vague to enable him to prepare a defense.
 {¶ 8} Counts One through Four of the State's indictment alleged sexual battery between the dates of June 28, 2005 and July 1, 2005. Counts Five through Eight alleged unlawful sexual conduct with a minor between June 28, 2005 and July 1, 2005. Counts Nine and Ten alleged that Walton engaged in sexual conduct with a child under the age of thirteen (rape) between February 1, 2003 and March 31, 2003. Counts eleven and twelve alleged sexual conduct with a child under the age of thirteen (rape) between March 1, 2003 and April 30, 2003. Count Thirteen alleged that Walton had engaged in gross sexual imposition of a child under 13 between February 1, 2003 and March 31, 2003. Count Fourteen alleged gross sexual imposition of a child under *Page 4 
13 between March 1, 2003 and April 30, 2003.
 {¶ 9} Walton alleges that the time frames and nature of the inappropriate conduct set forth in the indictment and bill of particulars were so vague that they denied him his constitutional right to due process and a fair trial. Walton describes the bill of particulars as "woefully inadequate" in that it failed to narrow the time frames set forth in the indictment and failed to identify any specific act of sexual contact or conduct. Walton asserts that the case against him should have been dismissed because the limited information provided by the state prevented him from mounting an effective defense.
 {¶ 10} In cases of child sexual abuse, young victims often are unable to remember exact dates and times when the offenses occurred, especially when the crimes involve a repeated course of conduct over a lengthy period of time. State v. Barnecut (1988), 44 Ohio App.3d 149,542 N.E.2d 353. Because the precise date and time of the offense of rape are not essential elements of that crime, a certain degree of inexactitude in averring the date of the offense is not necessarily fatal to its prosecution. State v. Sellards (1985), 17 Ohio St.3d 169, 171,478 N.E.2d 781. "Ordinarily, specifications as to date and time would not be required in a bill of particulars since such information does not describe particular conduct, but [instead describes] only when that conduct is alleged to have occurred, knowledge of which is generally irrelevant to the preparation of a defense." State v. Gingell (1982),7 Ohio App.3d 364, 367, 455 N.E.2d 1066.
 {¶ 11} Nevertheless, when a defendant requests a bill of particulars stating a more precise date concerning when the conduct occurred, a trial court must determine *Page 5 
whether the state possesses that information and whether that information is material to the defendant's ability to prepare a defense.State v. Marrs, Montgomery App. No. 18903, 2002-Ohio-3300, at ¶ 10-11. If both questions are answered in the affirmative, the court must order the State to provide the information requested. Id. at ¶ 11.
 {¶ 12} Our review of the bill of particulars reveals that it provided little, if any, additional specificity with regard to the inappropriate sexual conduct alleged in the indictment. However, Walton's admission in August 2005 that he had engaged in a course of conduct "over the past two years or so" that included the acts described in the bill of particulars undercuts his claim that the lack of detail prejudiced his defense.
 {¶ 13} In support of his argument that his defense was prejudiced, Walton relies upon Sellards, which discussed two examples of when the state's inability or failure to provide specific dates and times could be prejudicial to an accused. Sellards, 17 Ohio St.3d at 172. InSellards, the court noted that, if the age of the victim were an element of the crime charged and the victim bordered on the age required to make the conduct criminal, then failure to provide a more specific time in an indictment or bill of particulars would be prejudicial. Id. The court also noted that, where "the Appellant had been imprisoned or was indisputably elsewhere during part but not all of the intervals of time set out in the indictment," failure to provide a more specific time would be prejudicial. Id.
 {¶ 14} Walton claims that he suffered prejudice from the State's failure to provide a more specific time frame because the age of the victim was an element of the offenses charged under R.C.2907.02(A)(1)(b) and R.C. 2907.05(A)(4). Thus, Walton asserts that the dates of the offenses were essential to his defense because *Page 6 
he was charged with illegal sexual conduct with, and gross sexual imposition of, a child under thirteen, as well as illegal sexual activity with the same child after the child turned thirteen.
 {¶ 15} The record does not support Walton's claim. Contrary to his assertion, it is clear from the record that C.W. was not bordering on the age of thirteen in February, March, or April 2003 when the age sensitive offenses were alleged to have occurred. C.W. did not turn thirteen until October 16, 2003. C.W. testified at trial that all of the acts that were alleged to have occurred when he was under thirteen years of age occurred prior to April 30, 2003. The indictment, the bill of particulars, and the testimony of the victim all consistently identified the February through April 2003 time frame. There is no State's evidence that the alleged age sensitive offenses took place in the fall of 2003. Thus, Walton failed to establish that he would have been able to present a more effective defense if he had been informed of a more specific date within the two-month time frame alleged in the indictment and bill of particulars.
 {¶ 16} Turning to the second example cited by the Sellards court, Walton did not present any evidence to suggest that he was indisputably elsewhere when the offenses occurred. The testimony of his witnesses did not foreclose that Walton could have been at the locations where the offenses were alleged to have occurred between February and April 2003. Further, the trial court chose not to believe the testimony of Walton's two key witnesses who asserted that the conduct had to have occurred during a different period than that alleged by the victim. The State also presented the testimony of Detective Flynn of the Vandalia Police Department, who spoke with both the victim and Walton on August 30, 2005. Walton admitted to Flynn that "over the *Page 7 
past two years or so," he had engaged in mutual masturbation and oral sex with C. W. and had penetrated C.W. with a sex toy. This admission supported the finding that Walton was not indisputably elsewhere when the offenses occurred.
 {¶ 17} Walton also asserts that the State possessed further detail in connection with the dates and locations of the alleged offenses. He cites the victim's testimony at trial regarding counts Nine through Fourteen. While the indictment and bill of particulars provided sixty-day windows during which the offenses occurred, C.W. testified that each offense occurred within a thirty-day window. However, the State repeatedly claimed both prior to and during trial that it was unable to narrow the dates in the indictment and bill of particulars. The State asserted that it could only rely on what the victim had said before trial and that C.W. had been "steadfast" that he did not know exact dates for when the conduct occurred. The court accepted the State's representations that it had not possessed more specific dates prior to trial. Thus, the trial court reasonably concluded that, while C.W. was ultimately able to provide more specificity about the dates when he testified at trial — reducing the time frame from the two-month period alleged in the indictment to a one-month period — the State had not possessed this information prior to C.W.'s testimony.
 {¶ 18} Based on the evidence presented, the trial court could have reasonably concluded that the State had been unable to provide more specific dates in response to Walton's request because it did not have that information. See Marrs, 2002-Ohio-3300, TJ10-11. Therefore, Walton was not denied his right to due process and a fair trial.
 {¶ 19} The first assignment of error is overruled. *Page 8 
 {¶ 20} II. "THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY OF FOUR COUNTS OF RAPE."
 {¶ 21} Walton argues that counts Nine through Twelve of the indictment should have been dismissed because his conviction on these counts was against the manifest weight of the evidence. These counts allege violations of R.C. 2907.02(A)(1)(b), which provides that "no person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when * * * the other person is less than thirteen years of age, whether or not the offender knows the age of the other person." The state asserted that the conduct supporting the rape charges against Walton occurred between February 1 and April 30, 2003, when the victim was twelve. Walton contends that it occurred in 2004, when the victim was thirteen.
 {¶ 22} When reviewing the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. The weight of the evidence has been defined as "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury [or judge sitting without a jury] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is before them. Weight is not a question of mathematics, but depends on its effect in *Page 9 
inducing belief." Id. at 387, citing Black's Law Dictionary, (6th Ed.1990) 1594.
 {¶ 23} The appellate courts' role in weighing the evidence is a limited one. "Because the factfinder has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder who has seen and heard the witness." State v. Lawson (August 22, 1997), Montgomery App. No. 16288. Therefore, "this court will not substitute its judgement for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict." State v. Bradley (October 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 24} In the present case, the testimony offered by defense witnesses differed from the account of the victim and his mother in terms of the timing of the alleged offenses. The victim, C.W., stated that the rapes in February 2003 had occurred at his great-aunt's house. He testified that these rapes took place while his great-aunt was on vacation in Florida. C.W.'s mother also testified at trial that the victim's great-aunt took her vacation to Florida in February 2003.
 {¶ 25} C.W. further testified that Walton raped him at his grandmother's home in March of 2003. C.W. was sure it happened in March of that year because it was after his mother's birthday on January 5th, as well as his brother Zach's birthday on February 24th, "and it was before school let out, and it was not warm yet."
 {¶ 26} Walton's defense was that he did not engage in sexual acts with C.W. in *Page 10 
2003. Walton and C.W. `s maternal grandmother and great-aunt testified on Walton's behalf. Both stated that they could not recall any time in 2003 that Walton and C.W. were alone in their homes. These assertions contradicted C.W.'s testimony that he and Walton had sexual encounters at those locations during February and March 2003. Walton's great-aunt further contradicted C. W. `s testimony by claiming she was not on vacation during February of 2003, claiming instead that it was February of 2004. Walton's grandmother asserted that the great-aunt had never been to Florida. Beyond this conflicting testimony, no evidence was presented supporting the specific date of the great-aunt's vacation. C.W. `s grandmother contended that she "could not recall" him being alone in her home with Walton at any time in 2003.
 {¶ 27} Credibility must be determined by the trier of fact. In this case, the trial court was presented with conflicting versions of events from family members of C.W. and Walton. The trial court reasonably determined that the testimony of the state's witnesses was more credible on this point. With regard to C.W.'s grandmother, the court found that her testimony did not "make logical sense." The court also considered it important that she had actively engaged in damage control to the keep the family from falling apart. As for the victim's great-aunt, the court chose to believe that her vacation took place in 2003. C.W. related specific details about how the rapes occurred, where they occurred, and when they occurred. The details of C.W.'s testimony as to the nature of the offenses were corroborated by Walton's own statement to Detective Flynn. Accordingly, we cannot say that the trial court "lost its way" when it credited the state's version of events or that its judgment was against the manifest weight of the evidence. *Page 11 
 {¶ 28} The second assignment of error is overruled.
 {¶ 29} The judgment of the trial court will be affirmed.
 FAIN, J. and DONOVAN, J., concur. *Page 1